**IN THE UNITED STATES DISTRICT COURT**
**THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

SERENA GARVIN and KATHERINE
MURPHY,

       Plaintiffs,

vs.

SIOUXLAND MENTAL HEALTH
SERVICES, INC., d/b/a SIOUXLAND
MENTAL HEALTH CENTER; KIM
FISCHER-CULVER; and JIM RIXNER,

      Defendants.

No. C 10-4107-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING PLAINTIFFS'
MOTION IN LIMINE TO EXCLUDE
DEFENDANTS' EXPERT'S
TESTIMONY**

FILED UNDER SEAL

---

**TABLE OF CONTENTS**

I.   **INTRODUCTION**.................................................................3
    A.   *Factual Background* .................................................3
    B.   *Procedural Background* ...........................................3

II.   **LEGAL ANALYSIS** .....................................................5
    A.   *Exclusion Of Dr. Chesen's Testimony In Its Entirety*......5
        1.   *Invasion of the province of the jury* ....................5
        2.   *Insufficient reliability*.................................7
    B.   *Limitations On Dr. Chesen's Testimony* .................... 11
        1.   *Limitation to conclusions in Dr. Chesen's report* ................. 11
        2.   *Exclusion of conclusions invading the province of the jury* ..... 12
            a.   *Arguments of the parties* ...................... 12
            b.   *Applicable standards* ........................... 12
            c.   *Analysis* ....................................... 14
                i.   *Conclusions regarding plaintiff Murphy*............... 14
                ii.   *Conclusions regarding plaintiff Garvin* ............... 18
        3.   *Summary*................................................ 23

III.   **CONCLUSION** .......................................................... 23

Female employees allege that they were sexually harassed when they were propositioned by their female supervisor to engage in sexual relationships and that their employer retaliated against them for reporting such harassment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216. As this matter approached a scheduled trial date of June 18, 2012,[1] the plaintiffs moved to exclude the testimony of the defendants' psychiatric expert, in its entirety, on the grounds that the expert's testimony (1) improperly invades the province of the jury by opining on the plaintiffs' credibility in various ways; and (2) is not reliable under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). In the alternative, the plaintiffs assert that the expert's testimony on matters that are not set forth in his report should be excluded. The defendants assert that their expert's testimony should not be excluded in its entirety, because the expert will not be asked to opine on credibility matters or matters beyond the scope of his report, pointing out that the plaintiffs' counsel elicited such opinions during deposition, their counsel did not. The defendants also assert that their expert's opinions, so limited, satisfy the requirements of *Daubert*.

---

[1] While this motion was pending, the trial was rescheduled to begin September 17, 2012, owing to the potential length of the trial and the unavailability of a witness.

# I.    INTRODUCTION

## A.    Factual Background

I set forth the factual background to this lawsuit in some detail in my opinion on the defendants' motions for summary judgment.  *See Garvin v. Siouxland Mental Health Servs., Inc.*, 2012 WL 1820647, *1-*15 (N.D. Iowa, May 18, 2012) (slip op.). Therefore, I will not repeat that discussion here.  For present purposes, suffice it to say that plaintiff Serena Garvin was employed as a community support specialist by a mental health provider, defendant Siouxland Mental Health Services, Inc., doing business as Siouxland Mental Health Center (SMHC), and plaintiff Katherine Murphy was employed by SMHC as a contract therapist, then as a full-time mental health therapist.  Each alleges that she was sexually harassed by her immediate supervisor, Kim Fischer-Culver, consisting of Fischer-Culver's propositions, to Murphy in 2005 and to Garvin in 2009, to engage in sexual relationships with her.  Murphy contends that, when she rebuffed Fischer-Culver's advances, Fischer-Culver began to retaliate against her in various ways and that, when she later complained to management, she suffered additional retaliation and ostracism from other employees of the SMHC. Garvin also alleges that, after she complained about Fischer-Culver's harassment to SMHC management, she was also subjected to retaliation by other employees of SMHC.


## B.    Procedural Background

On November 5, 2010, Garvin and Murphy filed a Complaint against SMHC, SMHC's executive director, Jim Rixner, and Fischer–Culver, alleging the following causes of action:  (1) sexual harassment, in violation of the Title VII (Count I); (2) retaliation, in violation of Title VII (Count 2); and (3) pendent state law claims of sexual harassment and retaliation in violation of the ICRA (Count III).  On November

9, 2010, Garvin and Murphy filed an Amended Complaint against SMHC, Rixner, and Fischer–Culver, alleging the same claims as in their original Complaint.

On March 2, 2012, the defendants filed a joint motion for summary judgment on Garvin's claims and a separate joint motion for summary judgment on Murphy's claims. On May 18, 2012, I granted the defendants' motion for summary judgment on Murphy's sexual harassment claim, on the ground that it was time-barred, but denied their motion for summary judgment on Murphy's retaliation claim. I also denied in its entirety the defendants' motion for summary judgment on Garvin's claims. A jury trial on the claims that survived summary judgment was set to begin on June 18, 2012.

On May 10, 2012—while the defendants' motions for summary judgment were still pending—the plaintiffs filed the Motion In Limine (docket no. 39) now before me. In their motion, the plaintiffs assert that the testimony of the defendants' psychiatric expert, Dr. Eli Chesen, should be barred at trial, in its entirety, because (1) it makes improper attacks on their credibility, which is the province of the jury; and (2) it is not reliable under *Daubert*. In the alternative, they argue that the portions of Dr. Chesen's deposition testimony that were not set forth in his report should be stricken or precluded. The defendants filed a Response (docket no. 40), on May 16, 2012, resisting the plaintiffs' primary grounds for excluding the evidence in question, but representing that they have no objection to the court ordering that Dr. Chesen not be asked to express credibility opinions, and offering no resistance to the plaintiffs' alternative argument that Dr. Chesen's testimony be limited to opinions in his report, pointing out that the plaintiffs' counsel elicited opinions beyond the scope of Dr. Chesen's report during Dr. Chesen's deposition on April 5, 2012, but representing that their counsel will not attempt to elicit any such "off report" opinions during direct examination. While this motion was pending, the trial was rescheduled to begin

September 17, 2012, owing to the potential length of the trial and the unavailability of a witness.

I conclude that the written submissions are adequate to address the matters presented without a formal "*Daubert* hearing" or oral arguments. *See Ortiz v. United States*, 664 F.3d 1151, 1167 (8th Cir. 2011) ("In *Miller [v. Baker Implement Co.*, 439 F.3d 407 (8th Cir. 2006)], we held a *Daubert* hearing is not always necessary and noted 'the basic requirement under the law is that the parties have an "opportunity to be heard before the district court makes its decision."'" (citing *Miller*, 439 F.3d at 412, in turn quoting *Group Health Plan Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 761 n.3 (8th Cir. 2003))).[2]

## II.    LEGAL ANALYSIS

### A.    Exclusion Of Dr. Chesen's Testimony In Its Entirety

The plaintiffs first seek to exclude Dr. Chesen's testimony, in its entirety, on two grounds: (1) some of his testimony purportedly invades the province of the jury by opining on their credibility, *see* Plaintiffs' Motion In Limine, ¶ 1; and (2) his testimony is not reliable under *Daubert*. I will consider these arguments, in turn.

### 1.    Invasion of the province of the jury

Citing *Nichols v. American National Insurance Co.*, 154 F.3d 875 (8th Cir. 1998), the plaintiffs argue that Dr. Chesen's testimony exceeds the scope of proper expert opinion, because it infringes upon the jury's task to determine credibility. Indeed, they argue that his testimony is not even a "thinly veiled comment on a

---

[2] Although the plaintiffs' motion may be technically timely under the trial scheduling order, as a pretrial evidentiary motion, to the extent that it is a "*Daubert* challenge," if the plaintiffs desired a full-fledged "*Daubert* hearing," they should have filed their motion much sooner after they took Dr. Chesen's deposition on April 5, 2012.

witness' credibility," *see Nichols*, 154 F.3d at 884, but a direct attack on their credibility. Consequently, they argue that Dr. Chesen's testimony should be excluded in its entirety. The defendants argue that Dr. Chesen's credibility opinions stated in his deposition were elicited by the plaintiffs' counsel, not by their counsel. The defendants admit that such credibility opinions are inadmissible, but they assert that such inadmissible opinions do not render the rest of Dr. Chesen's medical opinions inadmissible. Specifically, they argue that *Nichols* in no way intimates that inadmissible credibility opinions taint an expert's medical opinions unrelated to credibility.

As the Eighth Circuit Court of Appeals has recognized, "Although expert opinion embracing an ultimate issue is permissible under Federal Rule of Evidence 704(a), 'courts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion.'" *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 732 (8th Cir. 2006) (quoting *Robertson v. Norton Co.*, 148 F.3d 905, 908 (8th Cir. 1998), with internal quotations omitted). The Eighth Circuit Court of Appeals has also made clear that expert testimony impugning a plaintiff's credibility is "not a proper subject for expert testimony under Fed. R. Evid. 702." *Nichols*, 154 F.3d at 883. As the court explained,

> Opinions of this type create a serious danger of confusing or misleading the jury, *see* Fed. R. Evid. 403, causing it to substitute the expert's credibility assessment for its own common sense determination. *See United States v. Kime*, 99 F.3d 870, 884-85 (8th Cir. 1996), *cert. denied*, 519 U.S. 1141, ----, 117 S. Ct. 1015, 136 L. Ed. 2d 892 (1997). Dr. Pribor was permitted to comment on Nichols' reliability "in the guise of a medical opinion," *United States v. Whitted*, 11 F.3d 782, 785-86 (8th Cir. 1993), and this "impressively qualified expert's stamp" of untruthfulness on

> Nichols' story went beyond the scope of proper expert testimony. *United States v. Azure*, 801 F.2d 336, 340 (8th Cir. 1986).

*Nichols*, 154 F.3d at 883.

Although *Nichols* bars the admission of expert opinions on the credibility of a plaintiff, I agree with the defendants that *Nichols* does not stand for the proposition that the court should strike or preclude the testimony of an expert *in its entirety*, if some of the expert's testimony improperly invades the province of the jury by opining on the credibility of the plaintiffs. Rather, in *Nichols*, the court held only that "the challenged testimony" of the expert, "impugning [the plaintiff's] psychiatric credibility and suggesting that recall bias, secondary gain, and malingering had influenced her story," should have been excluded. *Id.* Therefore, that part of the plaintiffs' Motion In Limine requesting that I exclude Dr. Chesen's testimony *in its entirety* because some of his testimony purportedly invades the province of the jury is denied.

### 2.    *Insufficient reliability*

Next, the plaintiffs assert that Dr. Chesen's expert testimony should be excluded, in its entirety, because it is not reliable under *Daubert*. They assert two deficiencies. First, they point to Dr. Chesen's failure to maintain basic records as to his work, including his failure to maintain notes of his interviews with the plaintiffs or their test scores, allowing others to be present during examinations, and some factual inaccuracies, which they argue demonstrate the unreliability of his opinions or, at the very least, have prejudiced their ability to check his work. Second, they argue that Dr. Chesen is rendering opinions in areas where he has a demonstrable lack of knowledge, because he has little or no training on sexual harassment and its effects, is not familiar with the literature on harassment and its effects, and could not cite a single treatise or other accepted basis for his opinions, other than his experience as a psychiatrist. They argue that their own expert has offered other criticisms of

Dr. Chesen's methodology and conclusions. They argue that, in essence, Dr. Chesen declared himself to be a "human lie detector," but cited no reliable scientific authority for his alleged abilities.

The defendants counter each of the plaintiffs' criticisms of Dr. Chesen. First, they point out that Dr. Chesen testified in his deposition that he entered notes on his computer contemporaneously with his interviews of the plaintiffs, but then incorporated those notes into his final written report for each plaintiff. They argue that Dr. Chesen's failure to take or keep handwritten notes is irrelevant. The defendants also point out that the test results that Dr. Chesen did not keep admittedly revealed "normal" findings for both plaintiffs on a test of short-term memory, that the plaintiffs have not claimed short-term memory loss as an injury in this case, and that Dr. Chesen did not rely on those test results to support any of his opinions. The defendants also argue that Dr. Chesen does not claim to be an expert on sexual harassment, which he recognized was a legal term, not a medical term, but focused, instead, on the presence or absence of psychiatric symptoms as a consequence of the plaintiffs' past employment with SMHC. Because Dr. Chesen is board certified in psychiatry and neurology, and his opinions are based on review of the plaintiffs' medical and psychiatric records, their civil rights complaints, and his clinical interviews, those opinions are reliable. More specifically, they argue that Dr. Chesen relied on the type of information typically relied on by independent medical or psychiatric experts to render opinions on whether a plaintiff has been injured and whether that injury was caused by the events claimed by that plaintiff. Thus, the defendants argue that Dr. Chesen's opinions are reliable on the following issues: whether either plaintiff suffers from post-traumatic stress disorder, as they allege; whether they have psychiatric diagnoses unrelated to their employment at SMHC; and whether their subjective symptoms match the objective findings.

As the Eighth Circuit Court of Appeals recently explained,

> In determining whether expert testimony should be admitted, the district court must decide if "the expert's methodology is reliable and can be reasonably applied to the facts of the case." *Eckelkamp v. Beste*, 315 F.3d 863, 868 (8th Cir. 2002). Pursuant to *Daubert*, the district court must conduct this initial inquiry as part of its gatekeeping function. *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 988 (8th Cir. 2001) (per curiam).

*David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012) (footnote omitted). "To satisfy the reliability requirement, the party offering the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Smith v. Bubak*, 643 F.3d 1137, 1140 (8th Cir. 2011) (internal quotation marks and citations omitted); *Khoury v. Philips Med. Sys.*, 614 F.3d 888, 892 (8th Cir. 2010); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006). However,

> [A] "mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007). Rather, if [an opposing party] th[inks] other assumptions and methods [a]re more appropriate, it ha[s] the opportunity to make this apparent "through cross-examination and by presenting [its] own expert witness." *Id.*

*David E. Watson, P.C.*, 668 F.3d at 1015.

Here, there does not seem to be any reason to doubt that Dr. Chesen, as a psychiatrist and neurologist, has the general qualifications to render an opinion on whether either plaintiff suffers from post-traumatic stress disorder, as they allege; whether they have psychiatric diagnoses unrelated to their employment at SMHC; and whether their subjective symptoms match the objective findings. *Smith*, 643 F.3d at 1015 (noting that qualifications of the expert go to reliability). To the extent that the

plaintiffs assert that Dr. Chesen lacks appropriate qualifications, because he has a demonstrable lack of knowledge, where he has little or no training on sexual harassment and its effects, is not familiar with the literature on harassment and its effects, and could not cite a single treatise or other accepted basis for his opinions, *other than his experience as a psychiatrist*, that criticism really goes to the question of whether a psychiatrist can assume that general psychiatric principles and general experience as a psychiatrist apply to the diagnosis of post-traumatic stress arising from sexual harassment.[3] Thus, it is a criticism of assumptions and methodology that does not warrant exclusion of Dr. Chesen's testimony, but may invite vigorous cross-examination of Dr. Chesen and presentation of the plaintiffs' own expert witness, Dr. Louise Fitzgerald. *David E. Watson, P.C.*, 668 F.3d at 1015.

Similarly, while the plaintiffs criticize Dr. Chesen's methodology, because he purportedly failed to maintain basic records as to his work, including his failure to maintain notes of his interviews with the plaintiffs or their test scores, allowing others to be present during examinations, and some factual inaccuracies, I am not convinced that these circumstances are a basis to exclude his opinions in their entirety. *Id.* The defendants have explained that Dr. Chesen's contemporaneous notes on his computer were incorporated into his reports and that "normal" test results, on which Dr. Chesen did not rely for any opinion, were not maintained. The plaintiffs cannot complain convincingly that they are prejudiced by these alleged methodological deficiencies, because they have received Dr. Chesen's report, and, again, they will have the

---

[3] Dr. Chesen's assumption that general psychiatric principles and general experience as a psychiatrist apply to the diagnosis of post-traumatic stress arising from sexual harassment is supported by his express reliance in his report on each plaintiff on The American Psychiatric Association Diagnostic and Statistical Manual IV-TR as the basis for his conclusions that Murphy and Garvin have not identified typical post-traumatic stress disorder stressors arising from their experiences with Fischer-Culver. *See* Plaintiffs' Appendix at 31 and 43.

opportunity to cross-examine Dr. Chesen on alleged factual inaccuracies and the presence of others during examinations and the effect that those circumstances might have had on his opinions, as well as the opportunity to present their own expert. *Id.*

In short, I do not find that lack of "reliability" justifies excluding Dr. Chesen's opinions in their entirety.

### B.    *Limitations On Dr. Chesen's Testimony*

### 1.    *Limitation to conclusions in Dr. Chesen's report*

"In the alternative," the plaintiffs argue, "the portions of Dr. Chesen's deposition testimony which were not set forth in his report should be stricken." Plaintiffs' Motion In Limine, ¶ 3 (docket no. 39). In their supporting brief (docket no. 39-1), 15, the plaintiffs assert, without citation to any specific portions of Dr. Chesen's deposition, that Dr. Chesen admitted in his deposition that his report did not state his conclusions that the plaintiffs had not been sexually harassed, that they were deliberately lying, and that they had conspired together to come up with their story. In their Response (docket no. 40), ¶ 3, the defendants state that they "do not resist paragraph 3 of the Motion in Limine." In light of the defendants' Response, I conclude that Dr. Chesen's trial testimony should be limited, in the first instance, to the confines of his report submitted pursuant to Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure.

This conclusion is not the end of the matter, however, because the plaintiffs assert that some of Dr. Chesen's opinions in his report are conclusions about their credibility, improperly invading the province of the jury. Thus, I turn to the question of whether any testimony consistent with Dr. Chesen's report should be excluded as improperly invading the province of the jury.

## 2. Exclusion of conclusions invading the province of the jury

### a. Arguments of the parties

The plaintiffs argue that Dr. Chesen's report contains many of the same opinions that were declared improper in *Nichols*, including Dr. Chesen's allegations that the plaintiffs are malingering and that their financial motives have influenced their description of the harassment. Indeed, the plaintiffs contend that Dr. Chesen went further than the expert in *Nichols*, because he accuses them of being delusional and giving false testimony about what happened, including that they had conspired together to come up with their claims.

The defendants represent that they do not intend to ask Dr. Chesen to comment on either plaintiff's credibility and that they have no objection to the court ordering that Dr. Chesen not be asked to express credibility opinions. However, they argue that Dr. Chesen's medical opinions, based on review of the plaintiffs' medical and psychiatric records and his clinical interviews, are fully admissible. More specifically, the defendants argue that Dr. Chesen offers typical opinions by a qualified medical or psychiatric expert, including his opinions on whether either plaintiff suffers from post-traumatic stress disorder, as they allege; whether they have psychiatric diagnoses unrelated to their employment at SMHC; and whether their subjective symptoms match the objective findings.

### b. Applicable standards

As noted above, the Eighth Circuit Court of Appeals made clear in *Nichols* that expert testimony impugning a plaintiff's credibility is "not a proper subject for expert testimony under Fed. R. Evid. 702." *Nichols*, 154 F.3d at 883. The fear is that such opinions might confuse or mislead the jury, within the meaning of Rule 403 of the Federal Rules of Evidence, "causing [the jury] to substitute the expert's credibility assessment for its own common sense determination." *Id.* Thus, an expert cannot be

12

permitted to comment on a plaintiff's credibility "'in the guise of a medical opinion.'" *Id.* (quoting *Whitted*, 11 F.3d at 785-86).

The Eighth Circuit Court of Appeals explained how the expert in *Nichols*, Dr. Pribor, had run afoul of these limitations on expert opinions, as follows:

> The problem with Dr. Pribor's testimony was [that it was not limited to the plaintiff's psychological state and general witness reliability], and it crossed over the line of what is helpful to the trier of fact. *See* Fed.R.Evid. 702. Dr. Pribor did more than explain psychiatric terms and the situations in which they may arise. She provided her own opinion that Nichols' statements to Dr. Tyndall were influenced by recall bias, secondary gain, and malingering. *Cf. United States v. Rouse*, 111 F.3d 561, 570-71 (8th Cir. 1997) (expert described "practices of 'suggestibility'" but did not testify that they were actually employed), *cert. denied*, 522 U.S. 905, 118 S.Ct. 261, 139 L.Ed.2d 188 (1997); *Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir. 1991) (expert permitted to describe battered woman syndrome but not to give opinion on whether the victim's actions were affected by it). Weighing evidence and determining credibility are tasks exclusive to the jury, and an expert should not offer an opinion about the truthfulness of witness testimony. *See Rouse*, 111 F.3d at 571; *Westcott v. Crinklaw*, 68 F.3d 1073, 1076 (8th Cir. 1995). Dr. Pribor's testimony about psychiatric credibility, malingering, recall bias, and secondary gain went beyond the permissible areas of her testimony. She used these terms to indicate that Nichols' version of the facts was inconsistent and changed over time and that it was tainted by bias and desire for financial gain. These were inferences for the jury to draw from the admissible evidence before it, and Dr. Pribor's testimony impermissibly instructed the jury on how to weigh that evidence. *See Whitted*, 11 F.3d at 785; *Azure*, 801 F.2d at 340. As the dissent acknowledges, this case turned on whose story the jury would believe—that of Nichols or that of her supervisors, Coates and Swift. Each side offered a different version of what had occurred so

credibility was of critical importance. American National's closing argument went beyond what the dissent views as "fair argument" by using Dr. Pribor's testimony to suggest that recall bias and secondary gain had affected Nichols' descriptions of key events and by failing to adhere to the prior assurances that this part of the expert testimony was offered only on the issue of damages.

*Nichols*, 154 F.3d at 883-84.

### c.     Analysis

As in *Nichols*, this case may turn on whose story the jury believes, that of each plaintiff or that of the defendants. *Id*. at 884. In these circumstances, I conclude that some, but not all, of Dr. Chesen's conclusions in his report that the plaintiffs challenge are improper comments by an expert on the credibility of a plaintiff, thus invading the province of the jury. *See id*. at 882-84. Perhaps the best way to address which conclusions are admissible and which are not is to consider Dr. Chesen's conclusions as to each plaintiff in turn.

### i.     Conclusions regarding plaintiff Murphy

The plaintiffs quote the following summary of Dr. Chesen's conclusions concerning plaintiff Murphy from Dr. Chesen's report, with italics indicating portions that they believe improperly comment on Murphy's credibility:

> A.     The patient presents within normal limits on examination. She came across as very angry at her former employer and describes *would be* consequences of Culver's behavior, which are highly dramatized in hyperbolic language. For example, she assumes she will be fired, she fears for her children and she describes retaliation in a most *bizarre and unlikely way*. She somehow sees her Ph.D. work as a negative experience and something forced upon her for some unexplainable reason.

B. She presents herself and her plight in a *grossly exaggerated manner motivated by secondary gain* from her $600,000 lawsuit which appears to be a kind of centerpiece in her life. She and her husband present with a very medical/legal presentation often whispering back and forth before answering questions.

C. In fact there is here a *marked discrepancy between her claimed symptoms and claimed disability* on one hand and any objective findings on the other.

D. She has a long list of multiple psychiatric problems including dysthymic disorder, panic disorder, depression an (sic) anxiety disorder, anorexia nervosa, alcoholism. She claims some of these conditions to be in remission. I would opine that none of the above conditions could reasonably be created or exacerbated by the experience of being propositioned by another party. While irritating and inappropriate, the sexual suggestions of Culver involved no touching, threatening or coercion.

E. Specifically as per The American Psychiatric Association Diagnostic and Statistical Manual IV-TR, the experiences described by Murphy are were [sic] not violent, life threatening or outside the normal range of life experiences such that one could reasonably infer consequent damage. The listed diagnoses simply do not occur as a consequence of what Murphy has *dramatized* in great detail with *inordinate* fears.

Plaintiffs' Appendix (docket no. 39-2) at 31 (with emphasis added in plaintiffs' Brief (docket no. 39-1) at 2-3).

In paragraph A, Dr. Chesen's use of "*would be* consequences of Culver's behavior" is, perhaps, a poor choice of words—*alleged* consequences might be better—

but even so, the statement does not amount to an "opinion about the truthfulness of [Murphy's] testimony" about the consequences of Fischer-Culver's behavior, it simply recognizes that Murphy has alleged certain consequences. *Compare Nichols*, 154 F.3d at 883 (noting that opinions about the truthfulness of the plaintiff's testimony are inadmissible). Dr. Chesen's statement that Murphy's description of the consequences was "highly dramatized in hyperbolic language," to which the plaintiffs have made no apparent objection, might invite the jurors to disbelieve Murphy's description of those consequences as exaggerated, but nevertheless is properly indicative of the expert's impression of Murphy's psychological state. *Id.* (noting that an expert's opinion on the plaintiff's psychological state would be admissible). Where I find that the line is clearly crossed between expert testimony about Murphy's psychological state and an opinion about the truthfulness of her testimony is with Dr. Chesen's opinion that Murphy "describes retaliation in a most *bizarre and unlikely way.*" This language plainly invites the jurors to find Murphy's description of the alleged retaliation to be incredible. *Id.* (precluding opinions on the credibility of the plaintiff). Testimony consistent with this clause of the third sentence of paragraph A will be excluded.[4]

In paragraph B, the opinion that Murphy "presents herself and her plight in a *grossly exaggerated manner motivated by secondary gain* from her $600,000 lawsuit . . ." plainly crosses the line established in *Nichols*, because it indicates that Murphy's statements were influenced by secondary gain and, thus, are opinions about the truthfulness of the witness and specifically instruct the jurors on how to weigh the

---

[4] While it is not my job to redact Dr. Chesen's opinions into admissible form, to provide some guidance, I would suggest that Dr. Chesen's opinion would likely be admissible if it stated that Murphy "describes retaliation in a *highly dramatic way.*" Such a formulation would, again, be properly indicative of the expert's impression of Murphy's psychological state without invading the province of the jury to determine whether a highly dramatic description is or is not credible.

evidence.  *Id*. at 883-84 (precluding such opinions).  Whether Murphy's testimony is influenced by the potential for a damages award is plainly for the jury to decide.  *Id*.  It would not be inappropriate, however, for Dr. Chesen to testify consistent with the remainder of paragraph B that this "lawsuit appears to be a kind of centerpiece in [Murphy's] life," or to observe that "[s]he and her husband present with a very medical/legal presentation often whispering back and forth before answering questions."  The plaintiffs have not objected to these observations, and I find that these observations are properly indicative of the expert's impression of Murphy's psychological state, but leave to the jury what inferences about Murphy's credibility to draw from that psychological state.  *See id*.

In paragraph C, I do not agree with the plaintiffs that the statement that "there is a *marked discrepancy between [Murphy's] claimed symptoms and claimed disability* on the one hand and any objective findings on the other" improperly invades the province of the jury.  In my view, a psychiatric expert may properly comment that claimed symptoms and claimed disability do not fit with objective findings concerning symptoms and disability.  This is a matter that falls well outside the scope of a layperson's experience and, thus, an expert's opinion on this matter is likely to be helpful to the trier of fact.  *See* FED. R. EVID. 702.  Furthermore, it is an opinion that is based on Dr. Chesen's clinical observations, and it is the product of his expert experience and evaluation.  *See id*.  While the plaintiffs contend that this (and other) comments show that it is readily apparent that Dr. Chesen's conclusions were based on his belief that both of the plaintiffs were not credible and have falsified the symptoms resulting from the harassment and retaliation, I find that this comment places before the jury the expert's observation of the discrepancy between the plaintiff's description and the objective findings, leaving to the jurors the question of whether the discrepancy is the result of conscious fabrication or motivated by secondary gain.  *Compare Nichols*,

154 F.3d at 884 (noting the difference between expressing an opinion on credibility of the plaintiff and commenting on the plaintiff's psychological state and objective observations).

The plaintiffs have not identified any portions of paragraph D as invading the province of the jury, so I pass on to paragraph E. In that paragraph, the plaintiffs object to Dr. Chesen's statement that "[t]he listed diagnoses simply do not occur as a consequence of what Murphy has *dramatized* in great detail with *inordinate* fears." I agree with the plaintiffs that the reference to "*inordinate* fears" is an improper comment on the credibility of Murphy's fears. The gravamen of the sentence, however, is an appropriate clinical opinion, on a matter on which a lay trier of fact is likely to find expert testimony helpful, that the listed diagnoses simply do not occur as a consequence of the conduct to which Murphy was allegedly subjected. *See* FED. R. EVID. 702. Thus, while not admissible in its present formulation, the opinion would be admissible if more narrowly stated to avoid commenting on Murphy's credibility.

### ii.    *Conclusions regarding plaintiff Garvin*

The plaintiffs quote the following summary of Dr. Chesen's conclusions concerning plaintiff Garvin from his report, with italics indicating portions that they believe improperly comment on Garvin's credibility:

> A.    The patient claims to have had her life turned upside down with PTSD overtones secondary to verbal sexual advances from a fellow employee. This claim is *vastly out of proportion* to what might reasonably result from a series of conversations; even intimate conversations as noted above.

> B.    The American Psychiatric Association Diagnostic and Statistical Manual IV-TR defines PTSD stressors as typically violent with rape, bodily injury or combat situations. Garvin can make no such claim here and

in fact Garvin was never physically touched by Culver.

C.     The patient's intimations of work related PTSD kinds of symptoms do not follow a course of progression typical of that seen in genuine PTSD.  That is, symptoms tend to ease over time with or without treatment in genuine post-trauma whereas Garvin says she is no better in this respect and has maybe even worsened over time.

D.     Garvin has a longstanding pre-existing psychiatric history.  If one takes into account her multiple diagnoses, past and present, one notes a number of disorders none of which could reasonably represent the mere consequence of a number of conversations and communications with Culver.

E.     In fact, Garvin, not just Culver, shared a great deal of very personal information with Culver including her own sexual and marital issues.  *It appears to me that Culver and Garvin shared the commonality of two women confiding in one another out of trust and a need to ventilate.*

F.     *It is uncanny how Garvin and Murphy, two very different people, seem to be expressing the same irrational fears about loss of job and other potential dangers eventuating from their relationships with Culver.  This appears more as self-serving legal maneuvering rather than a genuine commonality of fears.*

G.     Foremost, a review of the records and an examination of the patient reflect a BORDERLINE PERSONALITY DISORDER a life long pattern of maladaptation with patterns of unstable and turbulent emotions.  Inner feelings drive borderlines to impulsive behaviors and self mutilation, something

19

which Garvin has manifested and which she threatens to reenact. Borderlines often come from childhoods wherein there has been abandonment or a disrupted family life with sexual abuse. They often see things in terms of extremes and their view of people may change rapidly. Borderlines have a high incidence of eating disorders.

H.    I believe we see here the *intentional production of false and grossly exaggerated psychological symptoms motivated by secondary gain:  the expectation of an award.*

I.    She, like Murphy, comes across with medical/legal presentation.

J.    There is a *marked discrepancy between her symptoms and claimed disability* on one hand and the objective findings on the other.

Plaintiffs' Appendix at 43-44 (with emphasis added in plaintiffs' Brief at 3-4).[5]

In paragraph A, the plaintiffs object to Dr. Chesen's statement that Garvin's "claim is *vastly out of proportion* to what might reasonably result from a series of conversations. . . ."  I disagree with the plaintiffs that such a statement is an improper comment on Garvin's credibility.  Rather, I believe that a psychiatric expert may properly comment that claimed symptoms and claimed disability do not fit with the circumstances from which such symptoms and disability allegedly arise.  This is a matter that falls well outside the scope of a layperson's experience and, thus, an expert's opinion on this matter is likely to be helpful to the trier of fact.  *See* FED. R. EVID. 702.  Furthermore, it is an opinion that is based on Dr. Chesen's clinical

---

[5] It is readily apparent from the quotations above that, contrary to Dr. Chesen's supposed admission in his deposition, the conclusions that he stated in his deposition that the plaintiffs were deliberately lying and that they had conspired together to come up with their story *were* found in his report.

observations, and it is the product of his expert experience and evaluation. *See id.* I find that this comment places before the jury the expert's observation of the discrepancy between Garvin's claimed injury and the circumstances that allegedly gave rise to that injury, as understood by an objective expert, leaving to the jurors the question of whether the discrepancy is the result of conscious fabrication or exaggeration of either the injury or the circumstances. *Compare Nichols*, 154 F.3d at 884 (noting the difference between expressing an opinion on credibility of the plaintiff and commenting on the plaintiff's psychological state and objective observations). The opinion is, of course, subject to impeachment, if Dr. Chesen's understanding of the circumstances giving rise to Garvin's claim is erroneous or incomplete, or if his understanding of the consequences likely to follow from the circumstances alleged is flawed.

The plaintiffs have not objected to any portions of paragraphs B, C, or D, so I pass on to paragraph E. In that paragraph, the plaintiffs object to the statement, "*It appears to me that Culver and Garvin shared the commonality of two women confiding in one another out of trust and a need to ventilate.*" It is difficult for me to see how this statement of an expert's assessment of the relationship between Culver and Garvin is a comment on Garvin's credibility. This is a matter that may fall outside the scope of a layperson's experience and, thus, an expert's opinion on this matter is likely to be helpful to the trier of fact. *See* FED. R. EVID. 702. Furthermore, it is an opinion that is based on Dr. Chesen's clinical observations, and it is the product of his expert experience and evaluation. *See id.* I will not exclude this observation.

The plaintiffs object to paragraph F in its entirety. That paragraph states,

> F.    *It is uncanny how Garvin and Murphy, two very different people, seem to be expressing the same irrational fears about loss of job and other potential dangers eventuating from their relationships with Culver. This appears more as self-serving legal*

> *maneuvering rather than a genuine commonality of fears.*

I agree with the plaintiffs that this opinion, in its present form, is an inadmissible comment on the credibility of both plaintiffs, as it suggests collusion and fabrication of injuries and purports to tell the jurors what conclusion to draw. *See Nichols*, 154 F.3d at 883-84 (stating that an expert may not comment on a plaintiff's credibility or tell jurors how to weigh evidence). It plainly invites the jurors to substitute the expert's credibility assessment for their own common sense determination. *Id.* at 883. Nevertheless, there is, again, a nugget of a proper expert observation: That Garvin and Murphy, two very different people, claim to have the same symptoms or fears arising from their experiences at SMHC, and I believe that an expert could properly opine on the likelihood that two different people would have the same reaction to their experiences. Such an opinion would be based on clinical observations and would explain psychiatric principles to jurors, without stating an opinion about what conclusions jurors should draw from that information. *See id.* at 883 (distinguishing between an expert explaining psychiatric principles or syndromes and opining that such principles or syndromes actually applied to the plaintiff and caused the plaintiff to behave in a certain way). However, paragraph F, in its present form, is an inadmissible opinion.

The plaintiffs offer no objection to paragraph G, so I pass on to paragraph H. That paragraph states Dr. Chesen's opinion that Garvin's and Murphy's claims show "*intentional production of false and grossly exaggerated psychological symptoms motivated by secondary gain: the expectation of an award.*" This opinion is plainly precluded by *Nichols*. *See* 154 F.3d at 883 (an expert may not opine that the plaintiff's statements are influenced by secondary gain). The opinion in paragraph H is inadmissible.

The plaintiffs offer no objection to paragraph I, so I pass on to paragraph J. That paragraph states, "There is a *marked discrepancy between [Garvin's] symptoms and claimed disability* on one hand and the objective findings on the other." For the same reasons that paragraph C of the report as to Murphy is admissible, I conclude that this nearly identical paragraph of the report as to Garvin is also admissible. *Compare Nichols*, 154 F.3d at 884 (noting the difference between expressing an opinion on credibility of the plaintiff and commenting on the plaintiff's psychological state and objective observations).

### 3. Summary

Dr. Chesen's admissible opinions at trial will be limited, in the first instance, to those opinions expressed in his report. His admissible opinions at trial will be further limited to exclude those in his report that invade the province of the jury by opining on the credibility of the plaintiffs, as identified more specifically above.

## III. CONCLUSION

Upon the foregoing, the plaintiffs' May 10, 2012 Motion In Limine (docket no. 39) is **granted in part and denied in part**, as follows:

1.     The Motion is **denied** to the extent that it seeks exclusion of Dr. Chesen's testimony in its entirety, pursuant to either *Nichols* or *Daubert*;

2.     The Motion is **granted** to the extent that Dr. Chesen's admissible opinions at trial will be limited to those set forth in his report that do not invade the province of the jury by opining on the credibility of the plaintiffs, as identified specifically herein.

IT IS FURTHER ORDERED that, to avoid exposure of potential jurors to information about challenged evidence, this ruling shall be sealed until ten days after

completion of the trial or notice of any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED**.

**DATED** this 4th day of June, 2012.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA